**Nos. 23-3159, 23-3175, 23-3340, 23-3363 & 23-3385 (consol.)**

**IN THE**

# United States Court of Appeals

**FOR THE SEVENTH CIRCUIT**

BRIAN ELKINS and ANNIE ELKINS, *et al.*,

*Plaintiffs-Appellees*,

v.

SOUTHEASTERN INDIANA HEALTH MANAGEMENT, INC., D/B/A COLUMBUS REGIONAL HEALTH, *et al.*,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division,
Hon. James R. Sweeney, II, Case No. 1:23-cv-01117

## RESPONSE BRIEF OF PLAINTIFFS-APPELLEES


J. Gerard Stranch IV
Michael C. Iadevaia
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
(615) 254-8801 (telephone)
gstranch@stranchlaw.com
miadevaia@stranchlaw.com

Thomas J. Wiegand
Eugene A. Sokoloff
MOLOLAMKEN LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 450-6700 (telephone)
(312) 450-6701 (fax)
twiegand@mololamken.com
esokoloff@mololamken.com

*Counsel for Plaintiffs-Appellees*

*(Additional Counsel Listed on Inside Cover)*

Lynn A. Toops
COHEN & MALAD, LLP
One Indiana Square
Suite 1400
Indianapolis, IN  46204
(317) 636-6481 (telephone)
(929) 239-2968 (fax)
ltoops@cohenandmalad.com

Sara Tofighbakhsh
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
(212) 607-8160 (telephone)
(212) 607-8161 (fax)
stofighbakhsh@mololamken.com

*Additional Counsel for Plaintiffs-Appellees*

Save As Clear Form

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-3159

Short Caption: Brian Elkins, et al v. Southeastern Indiana Health Management Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Brian Elkins and Annie Elkins, individually and on behalf of all others similarly situated

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
MoloLamken LLP; Cohen & Malad LLP; Stranch, Jennings & Garvey, PLLC; Turke & Strauss LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Thomas J. Wiegand Date: March 22, 2024

Attorney's Printed Name: Thomas J. Wiegand

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: 300 N. LaSalle Dr., Ste. 5350

Chicago IL 60654

Phone Number: (312) 450-6703 Fax Number:

E-Mail Address: twiegand@mololamken.com

Save As | Clear Form

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-3159

Short Caption: Brian Elkins, et al v. Southeastern Indiana Health Management Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Brian Elkins and Annie Elkins, individually and on behalf of all others similarly situated

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
MoloLamken LLP; Cohen & Malad LLP; Stranch, Jennings & Garvey, PLLC; Turke & Strauss LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Eugene Alexis Sokoloff Date: March 22, 2024

Attorney's Printed Name: Eugene Alexis Sokoloff

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 300 N. LaSalle Dr., Ste. 5350

Chicago IL 60654

Phone Number: (312) 639-8410 Fax Number:

E-Mail Address: esokoloff@mololamken.com

rev. 12/19 AK

Save As Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-3159

Short Caption: Brian Elkins, et al v. Southeastern Indiana Health Management Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Brian Elkins and Annie Elkins, individually and on behalf of all others similarly situated

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

MoloLamken LLP; Cohen & Malad LLP; Stranch, Jennings & Garvey, PLLC; Turke & Strauss LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ J. Gerard Stranch, IV Date: March 22, 2024

Attorney's Printed Name: J. Gerard Stranch, IV

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: 223 Rosa L. Parks Ave, Suite 200

Nashville, TN 37203

Phone Number: (615) 254-8801 Fax Number:

E-Mail Address: gstranch@stranchlaw.com

Save As    Clear Form

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-3159

Short Caption: Brian Elkins, et al v. Southeastern Indiana Health Management Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Brian Elkins and Annie Elkins, individually and on behalf of all others similarly situated

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
MoloLamken LLP; Cohen & Malad LLP; Stranch, Jennings & Garvey, PLLC; Turke & Strauss LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Lynn A. Toops    Date: March 22, 2024

Attorney's Printed Name: Lynn A. Toops

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: One Indiana Square, Suite 1400
Indianapolis, IN 46204

Phone Number: (317) 636-6481    Fax Number:

E-Mail Address: ltoops@cohenandmalad.com

Save As | Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-3159

Short Caption: Brian Elkins, et al v. Southeastern Indiana Health Management Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Brian Elkins and Annie Elkins, individually and on behalf of all others similarly situated

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
MoloLamken LLP; Cohen & Malad LLP; Stranch, Jennings & Garvey, PLLC; Turke & Strauss LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Michael Iadevaia Date: March 22, 2024

Attorney's Printed Name: Michael Iadevaia

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: 223 Rosa L. Parks Ave, Suite 200

Nashville, TN 37203

Phone Number: (615) 254-8801 Fax Number:

E-Mail Address: miadevaia@stranchlaw.com

rev. 12/19 AK

Save As | Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-3159

Short Caption: Brian Elkins, et al v. Southeastern Indiana Health Management Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Brian Elkins and Annie Elkins, individually and on behalf of all others similarly situated

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
MoloLamken LLP; Cohen & Malad LLP; Stranch, Jennings & Garvey, PLLC; Turke & Strauss LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Sara Tofighbakhsh Date: March 22, 2024

Attorney's Printed Name: Sara Tofighbakhsh

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 430 Park Avenue
New York, NY 10022

Phone Number: (212) 607-8179 Fax Number:

E-Mail Address: stofighbakhsh@mololamken.com

rev. 12/19 AK

## TABLE OF CONTENTS

Page

INTRODUCTION .......... 1

JURISDICTIONAL STATEMENT .......... 3

STATEMENT OF THE ISSUES PRESENTED .......... 4

STATEMENT OF THE CASE .......... 4

A. Defendants Deploy Digital Trackers on Their Websites To Share Patients' Sensitive Personal Information with Advertisers .......... 4

B. Defendants Add Links on Their Websites to "Patient Portals" That Give Patients Access to Electronic Health Records .......... 7

C. Plaintiffs Bring State-Law Claims in State Courts, Challenging Defendants' Misuse of Their Personal Information .......... 9

D. Defendants Remove Plaintiffs' Actions, Invoking the Federal Officer Removal Statute .......... 10

E. The Decisions Below .......... 12

F. Decisions During These Pending Appeals .......... 14

SUMMARY OF ARGUMENT .......... 16

STANDARD OF REVIEW .......... 17

ARGUMENT .......... 17

I. Defendants Do Not "Act Under" Federal Officers by Maintaining Online Patient Portals .......... 19

A. A Private Party "Acts Under" a Federal Officer Only When It Assists in the Performance of a Governmental Function Under Exacting Supervision .......... 19

B. Defendants Fail To Allege Involvement with a Governmental Task or Duty ....................22

1. This Court's Decision in *Martin* Resolves These Appeals ....................23

2. Advancing Federal Policy Priorities Does Not Transform Private Acts into Official Action ....................25

3. Incentive Payments Do Not Make Defendants Government Contractors ....................31

C. Defendants Fail To Allege Exceptionally Close Supervision ....................33

II. Defendants' Conduct Does Not "Relate To" the Exercise of Federal Authority ....................36

III. Defendants Have No Colorable Federal Defense ....................41

A. Defendants Have No HIPAA Defense ....................42

B. Defendants Have No Implied-Preemption Defense ....................43

CONCLUSION ....................44

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Baker v. Atl. Richfield Co.*,
962 F.3d 937 (7th Cir. 2020) ........ *passim*

*Bausch v. Stryker Corp.*,
630 F.3d 546 (7th Cir. 2010) ........ 44

*Beauford v. Johns Hopkins Health Sys. Corp.*,
No. 23-CV-0660, 2023 WL 4237373 (D. Md. June 28, 2023) ........ 15

*Betzner v. Boeing Co.*,
910 F.3d 1010 (7th Cir. 2018) ........ 17, 26, 38

*Blum v. Yaretsky*,
457 U.S. 991 (1982) ........ 23, 31

*Bradley v. Vill. of Univ. Park, Illinois*,
59 F.4th 887 (7th Cir. 2023) ........ 32

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ........ 41, 43, 44

*Davis v. South Carolina*,
107 U.S. 597 (1883) ........ 25

*Doe I v. UPMC*, No. 20-CV-359,
2020 WL 4381675 (W.D. Pa. July 31, 2020) ........ 13

*Doe v. BJC Health Sys.*,
89 F.4th 1037 (8th Cir. 2023) ........ 14, 15, 29, 30

*Doe v. Christ Hosp.*,
No. 23-CV-27, 2023 WL 4757598 (S.D. Ohio July 26, 2023) ........ 15

*Doe v. Gundersen Lutheran Health Sys., Inc.*,
No. 23-CV-694-WMC, 2024 WL 489327 (W.D. Wis. Feb. 8, 2024) ........ 15

*Doe v. Margaret Mary Cmty. Hosp. Inc.*,
No. 23-cv-01655-JRS-KMB, 2024 WL 701942
(S.D. Ind. Feb. 21, 2024) ........................................................................ 15

*Doe v. Prairie Ridge Health, Inc.*,
No. 23-cv-00426-JDP, Dkt. 23 (W.D. Wis. Mar. 20, 2024)............................ 15

*Doe v. ProMedica Health Sys., Inc.*, No. 20-CV-1581,
2020 WL 7705627 (N.D. Ohio Oct. 30, 2020) .................................................. 13

*Doe v. SSM Health Care Corp.*,
No. 23-CV-00022-SRC, 2023 WL 5662099
(E.D. Mo. Aug. 22, 2023) ........................................................................ 15

*Doe v. Valley Health Sys., Inc.*,
No. 23-CV-185 (EP) (ESK), 2023 WL 6997301
(D.N.J. Oct. 24, 2023)........................................................................... 15

*Henry v. Cmty. Healthcare Sys. Cmty. Hosp.*,
134 N.E. 3d 435 (Ind. Ct. App. 2019) ............................................................. 42

*Jacks v. Meridian Res. Co.*,
701 F.3d 1224 (8th Cir. 2012) ...................................................................... 28

*Jefferson County v. Acker*,
527 U.S. 423 (1999) ............................................................................. 42, 43

*Lu Junhong v. Boeing Co.*,
792 F.3d 805 (7th Cir. 2015) .................................................................. 32, 34

*Martin v. LCMC Health Holdings, Inc.*,
No. 23-CV-411, 2023 WL 4540547 (E.D. La. July 5, 2023) ............................ 15

*Martin v. Petersen Health Operations, LLC*,
37 F.4th 1210 (7th Cir. 2022) ................................................................ *passim*

*Maryland v. Soper*,
270 U.S. 9 (1926) .................................................................................... 26

*Mays v. City of Flint*,
871 F.3d 437 (6th Cir. 2017) ...................................................................... 31

*Mesa v. California*,
489 U.S. 121 (1989)....................42

*Mohr v. Trs. of the Univ. of Pa.*,
93 F.4th 100 (3d Cir. 2024)....................13, 15, 29

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012)....................35

*Panther Brands, LLC v. Indy Racing League, LLC*,
827 F.3d 586 (7th Cir. 2016)....................3, 32, 34

*Progin v. UMass Mem'l Health Care, Inc.*, Nos. 22-CV-12022,
22-CV-40154, 23-CV-10113, 2023 WL 4535129
(D. Mass. July 13, 2023) ....................15

*Quinto v. Regents of Univ. of Cal.*,
No. 3:22-CV-04429, 2023 WL 1448050 (N.D. Cal. Feb. 1, 2023)....................15

*Ruppel v. CBS Corp.*,
701 F.3d 1176 (7th Cir. 2012)....................*passim*

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007)....................*passim*

*Whitaker-Pine v. Bd. of Trs. of Flavius J. Witham Mem'l Hosp.*,
No. 1:23-CV-1080-TWP-MJD, 2024 WL 448918
(S.D. Ind. Feb. 6, 2024) ....................15

*White v. United States*,
8 F.4th 547 (7th Cir. 2021) ....................41

**CONSTITUTION**

U.S. Const. art. 1, §8, cl. 11....................26

U.S. Const. art. 2, §2 ....................26

**STATUTES AND RULES**

28 U.S.C. §1442(a) ....................*passim*

42 U.S.C. § 300jj-11 .......... 40

42 U.S.C. § 1395w-4 .......... 8, 40

42 U.S.C. § 1395ww .......... 8

42 U.S.C. § 13201 .......... 27

Health Information Technology Act, Pub. L. 111-5, Title XIII, 123 Stat. 264 (Feb. 17, 2009) .......... 8

Small Business Act, Pub. L. No. 118-31 (Dec. 22, 2023) .......... 26

42 C.F.R. § 495.2-495.370 .......... 8

42 C.F.R. § 495.4 .......... 8

42 C.F.R. § 495.20 .......... 8, 33, 40

42 C.F.R. § 495.40 .......... 9, 33, 40

45 C.F.R. § 170.315 .......... 8, 9, 33, 40

45 C.F.R. § 170.102 .......... 40

Fed. R. App. P. 28(b) .......... 3

**OTHER AUTHORITIES**

Congressional Research Service, *The Inflation Reduction Act: Financial Incentives for Residential Energy Efficiency and Electrification Projects* (Nov. 28, 2022), https://crsreports.congress.gov/product/pdf/IF/IF12258/2?itid=lk_inline_ .......... 27

Department of Health and Human Services, *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates* (updated Mar. 18, 2024), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html .......... 11

Federal Trade Commission, *FTC and HHS Warn Hospital Systems and Telehealth Providers about Privacy and Security Risks from Online Tracking Technologies* (July 20, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/07/ftc-hhs-warn-hospital-systems-telehealth-providers-about-privacy-security-risks-online-tracking ............................. 11

Office of the National Coordinator, Patient Engagement Playbook, https://www.healthit.gov/playbook/pe/ (last visited Mar. 22, 2024) ............................................................................ 30, 33, 39

U.S. Small Business Administration, https://www.sba.gov/ (last visited Mar. 22, 2024) ............................................................................ 26

## INTRODUCTION

For years, Defendant healthcare providers collected sensitive personal information from patients who visited their websites to research health conditions, find doctors, and make appointments. Defendants promised they would keep that information private. Instead, they funneled their patients' personal information to third parties such as Google and Facebook, who then used it to help advertisers target Defendants' patients based on their medical issues and concerns.

Plaintiffs, patients of the Defendants, filed suit in Indiana and Illinois state courts asserting state-law privacy, contract, and consumer-protection claims. Defendants removed the cases under the federal officer removal statute, 28 U.S.C. § 1442(a), claiming they "acted under" the federal government in maintaining their websites. Defendants cited a voluntary incentive program administered by the Centers for Medicare and Medicaid that encourages private healthcare providers to give patients online access to electronic health records. That, Defendants argued, made them just like wartime contractors who "act under" federal officers when they produce something the government needs to fulfill a basic governmental task under

"detailed regulation, monitoring, or supervision." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007).

That argument did not fly. The district courts granted Plaintiffs' motions to remand, holding that Defendants did no more than comply with federal regulations—something this Court and the Supreme Court have said repeatedly is not enough to satisfy § 1442(a). Considering materially indistinguishable lawsuits, the Third Circuit, Eighth Circuit, and dozens of district courts around the country have reached the same conclusion. For good reason.

As this Court recently reiterated, "[p]rivate firms retain their private character even when many aspects of their conduct are controlled by federal statutes and rules." *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022). That is true even where the statutes and rules in question further important policy objectives. *Id.* It is true even where the consequence of noncompliance is the denial of Medicare reimbursements. *Id.* And it is true here.

Defendants ask this Court to brush aside its precedent and the Supreme Court's guidance, create a circuit split, and dramatically expand the subject-matter jurisdiction of the federal courts. They offer no compelling reason to venture out on such a rotten limb. Defendants give no reason to think that

building and maintaining websites for Defendants' patients is a task the government "would have otherwise used its own agents to complete." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012). Nor can Defendants show anything like the "closely monitored and highly regulated relationships" this Court has required before finding that a private party "act[s] under" a federal officer. *Panther Brands, LLC v. Indy Racing League*, *LLC*, 827 F.3d 586, 590 (7th Cir. 2016).

Those well-settled principles are sufficient to resolve these appeals. But Defendants cannot meet the federal-officer removal statute's other requirements, either. Defendants cannot show that Plaintiffs' claims are "for or relating to" any action they took under federal direction. 28 U.S.C. § 1442(a)(1). Indeed, Defendants identify no statute or regulation so much as suggesting, let alone directing, that they should install the tracking code challenged in these suits. And Defendants have no colorable federal defense to Plaintiffs' claims.

This Court should affirm.

## JURISDICTIONAL STATEMENT

Per Federal Rule of Appellate Procedure 28(b), Plaintiffs agree that the amended jurisdictional statement set forth by Defendants is complete and

correct. No. 23-3159, Dkt. 26 (Amended Jurisdictional Statement, Mar. 8, 2024).

## STATEMENT OF THE ISSUES PRESENTED

1. Whether Defendants "acted under" federal officers within the meaning of 28 U.S.C. § 1442(a)(1) when they maintained patient portals to their websites under a voluntary federal program that offered them financial incentives to do so.

2. Whether Defendants plausibly alleged that they implement tracking technologies that surreptitiously transmit user data to third parties, like Facebook and Google, at the government's direction.

3. Whether the Defendants asserted colorable federal defenses to Plaintiffs' claims.

## STATEMENT OF THE CASE

### A. Defendants Deploy Digital Trackers on Their Websites To Share Patients' Sensitive Personal Information with Advertisers

Defendants are private healthcare providers in Indiana and Illinois. Each Defendant maintains a public-facing website. App.27, 33 ¶¶5, 34 (*Elkins*); App.963 ¶¶35-36 (*Fleece*). Patients are invited to visit these websites to learn about Defendants' services and doctors, find information about health

conditions, make appointments, and pay bills, among other things. App.27, 33 ¶¶5, 34 (*Elkins*); App.211 ¶5 (*Lamarr*); App.963 ¶¶35-36 (*Fleece*).[1]

In privacy notices and policies, Defendants promise that they will not share patients' personal identifying and health information with third parties without the patients' knowledge and written consent. App.39-41 ¶¶65-71; App.70-81, Ex.A-B (Columbus Regional Health); App.224-225 ¶¶68-73; App.258-275, Ex.A-B (Goshen Health System); App.628-630 ¶¶68-73; App.663-669, Ex.A (Sarah Bush Lincoln Health Center); App.969-970 ¶¶66-71 (Hancock Regional Hospital); App.1333-1337 ¶¶67-79 (Methodist Hospitals).

Despite these promises, each Defendant's website includes one or more digital trackers—bits of code that surreptitiously collect information about visitors' activities and transmit that data to third parties. App.27-28, 34-39 ¶¶6-7, 36-64.[2] For example, a patient who visits Defendants' websites and

---

[1] Although the state law claims brought by each of the five sets of Plaintiffs in this consolidated appeal differ, the complaints are nearly identical, and the claims are premised on the same core allegations. *See* App.25-69 (*Elkins*); App.209-256 (*Lamarr*); App.610-660 (*Doe*); App.954-998 (*Fleece*); App.1317-1366 (*Chiaro*). Unless otherwise specified, this brief cites only the allegations as set forth in the Complaint by Brian and Annie Elkins, the Plaintiffs in the lead case on appeal, when citing common allegations. App.25-69.

[2] Each Complaint alleges that Defendants used tracking software offered by Facebook, called the "Meta Pixel," as well as Facebook's Conversions Application Programming Interface ("CAPI"), which further tracks the user's website

searches for "depression," "pregnancy," or "HIV," or clicks a link for "Mental Health Services," would have those searches and clicks, along with identifying information such as their Internet Provider address, logged and transmitted to Facebook, Google, or other third parties. App.30, 34-35, 41-42, 51-52 ¶¶15, 40-41, 72, 115-122.

Defendants allege that they installed these trackers to improve their marketing and advertising to customers and patients. App.35, 41-42 ¶¶43, 72-74. In exchange for data about Defendants' patients, companies like Facebook and Google help Defendants track the reach and impact of their online advertisements, allowing Defendants to see which ads worked to drive traffic to their sites. App.27-28, 31, 33-34, 36, 39, 52, 61 ¶¶6-9, 23, 35, 38, 46, 61, 123-126, 164.

The information Defendants hand over without patients' knowledge or consent is also valuable to the third parties' own advertising business.

---

interaction, records and stores that information on Defendants' web servers, and then transmits that information to Facebook. App.28-30 ¶¶9-15 (*Elkins*); App.212-214 ¶¶9-17 (*Lamarr*); App.613-615 ¶¶9-17 (*Doe*); App.957-959 ¶¶9-18 (*Fleece)*; App.1319-1322 ¶¶7-18 (*Chiaro*). Plaintiffs also variously allege Defendants installed similar tracking technologies by other companies like Google, Microsoft, TikTok, Simplifi, and LinkedIn. *See* App.30 ¶16 (*Elkins*); App.214-215 ¶18 (*Lamarr*); App.615 ¶18 (*Doe*); App.957-958 ¶11 (*Fleece*). For simplicity, this brief refers to all technologies that perform these functions as "trackers." *See* App.28-30 ¶¶9-16.

Trackers give these third parties a robust profile of Defendants' patients. App.28, 41-42 ¶9, 72-74. These profiles are then used to target Defendants' patients for marketing by advertisers who use Facebook, Google, and other popular websites and platforms. App.30, 36 ¶¶15, 47. They allow, for example, Facebook to sell a drug company targeted ad space for blood pressure medication on the Facebook feed of a patient who searched one of Defendants' websites for information on hypertension. *See* App.29-30, 46 ¶¶14-15, 95.

### B. Defendants Add Links on Their Websites to "Patient Portals" That Give Patients Access to Electronic Health Records[3]

Over the last fifteen years, Defendants have added links to their public-facing websites that give patients access to separate, password-protected websites. *See* App.5-20 (*Elkins*); App.191-207 (*Lamarr*); App.595-606 (*Doe*); App.936-952 (*Fleece*); App.1299-1315 (*Chiaro*). These non-public "patient 'portals'" allow patients "to communicate directly with their providers and immediately access (or transfer) their medical records" in a user-friendly manner. App.11 ¶19.

[3] The facts set forth in this portion of the statement are drawn from the allegations in Defendants' notices of removal, each of which alleges the same core facts. *See* App.5-20 (*Elkins*); App.191-207 (*Lamarr*); App.595-606 (*Doe*); App.936-952 (*Fleece*); App.1299-1315 (*Chiaro*). Unless otherwise specified, this brief cites the notice of removal in the lead *Elkins* case when referring to common allegations. App.5-20.

By maintaining these patient portals, Defendants benefit from a federal government incentive program. In 2009, Congress enacted the Health Information Technology for Economic and Clinical Health ("HITECH") Act. *See* Pub. L. 111-5, Title XIII, 123 Stat. 264 (Feb. 17, 2009) (codified at 42 U.S.C. §300jj-11 *et seq.*). The Act offered incentive payments for private healthcare providers that qualify as "meaningful" users of electronic health records or "EHR." 42 U.S.C. §§1395w-4(o), 1395ww(n). Any healthcare provider that was "***not*** a meaningful EHR user" by 2015 would see their Medicare reimbursements reduced. 42 U.S.C. §§1395w-4(a)(7)(i), 1395ww(b)(3)(B)(ix) (emphasis added).

In 2010, the Department of Health and Human Services ("HHS") and the Centers for Medicare and Medicaid Services ("CMS") promulgated regulations that define what constitutes "meaningful use" under the Act. 42 C.F.R. §495.2-495.370; *see also, e.g.*, 42 C.F.R. §495.20(f)(12); 45 C.F.R. §170.315(e)(1)(i). These regulations, and the associated incentives, are referred to collectively as the "Promoting Interoperability Program" or, colloquially, the "Meaningful Use program." 42 C.F.R. §495.4.

To obtain incentive payments or avoid reductions in their Medicare reimbursements, providers self-certify their compliance with the meaningful-

use criteria annually. *See* App.198 ¶36 (*Lamarr*); 42 C.F.R. §495.40; 45 C.F.R. §170.315. Defendants do not allege that the government otherwise monitors providers for compliance.

### C. Plaintiffs Bring State-Law Claims in State Courts, Challenging Defendants' Misuse of Their Personal Information

Plaintiffs are Defendants' current or former patients.[4] They brought these suits in Illinois and Indiana state courts on behalf of proposed statewide classes. The complaints, which are substantially identical, allege that Defendants' collection and transmission of patients' private health and personally identifying information to third parties violates various state-law privacy protections. *See* App.32 ¶26 (*Elkins*, Indiana claims); App.216 ¶28 (*Lamarr*, same); App.961 ¶27 (*Fleece*, same); App.1323 ¶26 (*Chiaro*, same); App.617 ¶28 (*Doe*, Illinois claims). The complaints also assert related contract and consumer-protection claims. *See* App.27, 41-42 ¶¶6, 72-76.

---

[4] *See* App.32 ¶¶27-29 (Brian and Annie Elkins and Columbus Regional Health ("Columbus Regional")); App.216-217, 228 ¶¶29-30, 86-91 (Kaitlin Lamarr and Goshen Health System ("Goshen")); App.617 ¶¶29-30 (John Doe and Sarah Bush Lincoln Health Center ("SBL")); App.961 ¶¶28-29 (Jennifer Fleece and Hancock Regional Healthcare ("Hancock Regional")); App.1324 ¶¶28-29 (Keith Chiaro and Jane Doe and the Methodist Hospitals ("Methodist")).

### D. Defendants Remove Plaintiffs' Actions, Invoking the Federal Officer Removal Statute

Defendants timely removed each case to federal court, asserting jurisdiction under the federal officer statute, 28 U.S.C. § 1442(a)(1), among other grounds, including federal-question jurisdiction, which they have abandoned on appeal. App.5 (*Elkins*); App.191 (*Lamarr*); App.595 (*Doe*); App.936 (*Fleece*); App.1299 (*Chiaro*).

Defendants' notices of removal alleged that, in creating online patient portals, they were "'working hand-in-hand with the federal government to achieve a task that furthers an end of the federal government'"—namely, creating a "nationwide, interoperable information technology infrastructure for health information." App.9, 13 ¶¶ 12, 28 (citation omitted). Defendants did not claim to be government contractors, creating patient portals for government use. To the contrary, they alleged that the government creates and maintains its own patient portals for Medicare recipients and veterans. App.11 ¶ 21. Instead, Defendants alleged that the Meaningful Use program "mandates that providers meet specific criteria to receive full Medicare reimbursement, including an interoperable patient portal." App.10 ¶ 18.

Defendants did not allege that the Meaningful Use program requires participants to surreptitiously collect their patients' personal information.

Instead, Defendants alleged that the federal government, "[l]eading by example," had embedded similar tracking technology on its own websites. App.11 ¶22. They suggested that such trackers help providers promote the use of patient portals, App.11 ¶¶20-22, claiming that this is "precisely what the [program] envisions," App.14 ¶32. Defendants did not specify whether the program "envisions" letting third parties like Facebook and Google use sensitive patient data to further their own advertising businesses. Nor did they mention that the government has sounded the alarm over the privacy risks associated with the very conduct plaintiffs challenge here. *See* App.49-50 ¶¶106-108; HHS, *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates* (updated Mar. 18, 2024), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html; Fed. Trade Comm'n ("FTC"), *FTC and HHS Warn Hospital Systems and Telehealth Providers about Privacy and Security Risks from Online Tracking Technologies* (July 20, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/07/ftc-hhs-warn-hospital-systems-telehealth-providers-about-privacy-security-risks-online-tracking.

Plaintiffs moved to remand. App.3, Dkt. 16 (*Elkins*); App.188, Dkt. 14 (*Lamarr*); App.593, Dkt. 9 (*Doe*); App.933, Dkt. 16 (*Fleece*); App.1296, Dkt. 12

(*Chiaro*). The district courts, joining an emerging nationwide consensus, granted Plaintiffs' motions.

### E. The Decisions Below

1. *Elkins v. Columbus Regional Hospital*. On October 10, 2023, the United States District Court for the Southern District of Indiana granted the motion to remand *Elkins*. App.177-184. The court concluded that Defendant Columbus Regional Hospital was not "acting under" the federal government when it created "an online patient portal that satisfied the criteria for Medicare incentive payments." App.178. The court acknowledged that private actors may sometimes qualify for removal under § 1442. App.179-180. The court found, however, that Columbus Regional fell into the "highly-regulated-but-not-acting-under category" of private actors that do not qualify for federal-officer treatment because its patient portal "is not something the government 'needs' . . . nor is the maintenance of electronic health records a 'basic governmental task.'" App.181 (internal citations omitted). Rather, the court concluded, "Columbus Regional is exactly what it looks like: a private hospital." App.181. The court did not reach the remaining criteria for removal under § 1442(a).

2. *Lamarr v. Goshen Health System, Inc.* The same court that issued the order in *Elkins* remanded *Lamarr* in a substantially identical order two days later, on October 12, 2023. App.574-581.

3. *Doe v. Sarah Bush Lincoln Health Center.* On November 13, 2023, the United States District Court for the Central District of Illinois granted the motion to remand *Doe*. App.913-928. Adopting the reasoning in *Lamarr*, the court held that "'participation in the Meaningful Use Program serves broad federal goals, not basic government functions[.]'" App.924. The court found, moreover, that Sarah Bush Lincoln Health Center had not shown that the government either exercised the requisite "tight control" over the creation of the patient portal or granted the hospital any "formal delegation" of its duties. App.924.

The court declined to follow the only two district court decisions to reach a contrary result under similar circumstances, *Doe I v. UPMC*, No. 20-CV-359, 2020 WL 4381675 (W.D. Pa. July 31, 2020), *overruled by Mohr v. Trs. of the Univ. of Pa.*, 93 F.4th 100, 106 (3d Cir. 2024), and *Doe v. ProMedica Health Sys., Inc.*, No. 20-CV-1581, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020). Those decisions, the court concluded, misapplied the Supreme Court's controlling precedent. App.925-926.

4. *Fleece v. Board of Trustees of Hancock Regional Hospital*. On November 17, 2023, another court in the Southern District of Indiana granted the motion to remand *Fleece*. App.1279-1284. That court, too, rejected the reasoning in *UPMC* and *ProMedica* and saw "no reason to reach a different conclusion" than *Elkins* and *Lamarr*. App.1281-1282.

5. *Chiaro v. Methodist Hospitals, Inc.* On November 29, 2023, yet another court in the Southern District of Indiana granted the motion to remand *Chiaro*. App.1654-1661. That court agreed with *Elkins*, *Lamarr*, *Doe,* and *Fleece*, observing that the mere fact that Methodist Hospitals "further[ed] a broad goal of the federal government to increase patients' access to online healthcare information, without more, is not enough" to make it "act[ ] under" a federal officer. App.1659.

These consolidated appeals followed.

**F. Decisions During These Pending Appeals**

While these appeals have been pending, two Courts of Appeals—the Eighth and Third Circuits—have affirmed the overwhelming consensus of the district courts. In *Doe v. BJC Health System*, 89 F.4th 1037 (8th Cir. 2023), the Eighth Circuit held that, "[w]hen [the defendant] created and operated an online portal for its patients, it was not doing the federal government's

business. It was doing its own." *Id.* at 1045. The Third Circuit agreed, overruling one of only two district court decisions in the country to have found federal officer removal on grounds urged by Defendants. *See Mohr*, 93 F.4th at 106 (overruling *UPMC*); Br.19-20, 27-28, 31. As of the filing of his brief, nearly identical appeals are pending in the Fifth and Ninth Circuits. *See, e.g., Martin v. LCMC Health Holdings*, No. 23-30522 (5th Cir.); *Doe v. Cedars-Sinai Health Sys.*, No. 23-55466 (9th Cir.).

The pattern of district courts remanding similar cases has also continued unabated in the Seventh Circuit, where four more district courts have reached the same conclusion.[5] They join over two dozen district courts (and counting) nationwide.[6]

---

[5] *See Whitaker-Pine v. Bd. of Trs. of Flavius J. Witham Mem'l Hosp.*, No. 1:23-CV-1080-TWP-MJD, 2024 WL 448918 (S.D. Ind. Feb. 6, 2024); *Doe v. Gundersen Lutheran Health Sys., Inc.*, No. 23-CV-694-WMC, 2024 WL 489327 (W.D. Wis. Feb. 8, 2024); *Doe v. Margaret Mary Cmty. Hosp. Inc.*, No. 23-CV-01655-JRS-KMB, 2024 WL 701942 (S.D. Ind. Feb. 21, 2024); *Doe v. Prairie Ridge Health, Inc.*, No. 23-CV-00426-JDP, Dkt. 23 (W.D. Wis. Mar. 20, 2024).

[6] *See, e.g.*, *Quinto v. Regents of Univ. of Cal.*, No. 3:22-CV-04429, 2023 WL 1448050 at *1 (N.D. Cal. Feb. 1, 2023); *Beauford v. Johns Hopkins Health Sys. Corp.*, No. 23-CV-0660, 2023 WL 4237373, at *4 (D. Md. June 28, 2023); *Martin v. LCMC Health Holdings, Inc.*, No. 23-CV-411, 2023 WL 4540547, at *6 (E.D. La. July 5, 2023); *Progin v. UMass Mem'l Health Care, Inc.*, Nos. 22-CV-12022, 22-CV-40154, 23-CV-10113, 2023 WL 4535129, at *5 (D. Mass. July 13, 2023); *Doe v. Christ Hosp.*, No. 23-CV-27, 2023 WL 4757598, at *9 (S.D. Ohio July 26, 2023); *Doe v. SSM Health Care Corp.*, No. 23-CV-00022-SRC, 2023 WL 5662099, at *6 (E.D. Mo. Aug. 22, 2023); *Doe v. Valley Health Sys., Inc.*, No. 23-CV-185 (EP) (ESK), 2023 WL 6997301, at *1 (D.N.J. Oct. 24, 2023).

## SUMMARY OF ARGUMENT

**I.** The Supreme Court and this Circuit have made clear that a private actor does not "act under" a federal officer unless that actor helps the government fulfill a basic duty under the government's close supervision or control. Merely complying with a regulatory scheme, even a highly detailed and onerous one, to advance a government interest cannot support removal under § 1442(a)(1). Defendants have alleged nothing more.

**II.** Defendants' bid for federal officer removal also fails for the independent reason that there is no connection between their use of third-party trackers and any conduct directed by a federal officer. Nothing in the Meaningful Use program instructs, directs, or even recommends that Defendants use web trackers to advance the patient portal initiative.

**III**. Finally, Defendants identify no colorable federal defense to Plaintiffs' claims. HIPAA does not provide Defendants with any defense to Plaintiffs' state-law claims. And Defendants' implied preemption theory fails because they identify no conflict between Plaintiffs' claims and their regulating agencies' obligations under federal law.

## STANDARD OF REVIEW

The Court "review[s] subject-matter jurisdiction and the propriety of the removal of a state-court action *de novo*." *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018). The removing party bears the burden of establishing jurisdiction. *See id.* The Court reviews the allegations in a defendant's 28 U.S.C. § 1442(a)(1) notice of removal under federal pleading standards. *Id.* at 1015. Conclusory allegations are insufficient. *See id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).

## ARGUMENT

These appeals are easily resolved: To establish federal subject-matter jurisdiction under 28 U.S.C. § 1442(a)(1), a defendant must show (1) that it is acting under an agency or officer of the United States, (2) that the challenged conduct is connected to the federal directives under which it claims to be acting, and (3) that it has a colorable federal defense to the state-law claims. *See Baker v. Atl. Richfield Co.*, 962 F.3d 937, 941, 943-44 (7th Cir. 2020). Defendants flunk out at step one.[7]

[7] Plaintiffs do not dispute that Defendants are "person[s]" within the meaning of the statute. 28 U.S.C. § 1442(a)(1).

The Supreme Court's precedent is unequivocal: A "private person's 'acting under' must involve an effort to ***assist***, or to help ***carry out***, the duties and tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007). That means helping the government "achieve an end it would have otherwise used its own agents to complete." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012). It "does ***not*** include simply ***complying*** with the law." *Watson*, 551 U.S. at 152.

Defendants' participation in a voluntary program that offers incentives for healthcare providers to give patients online access to health records is not helping the government carry out ***its*** duties or tasks. Defendants do not maintain patient portals for the government—the government has its own portals. Nor can Defendants seriously contend that the government would be creating portals for their patients if Defendants were not. At best, Defendants have alleged that they follow the Meaningful Use rules to avoid a reduction in their Medicare reimbursements. That is not enough.

"Private firms," this Court has explained, "retain their private character even when many aspects of their conduct are controlled by federal statutes and rules." *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1212-13 (7th Cir. 2022). That is true even where the statutes and rules in question

further important policy objectives, and even where the consequence of noncompliance is the denial of Medicare reimbursements. *See id.*

Defendants' claim to a federal forum for these garden-variety state-law claims ends there. If this Court considers Defendants' arguments on the statute's remaining elements, it should reject them too. Defendants fail to establish even an arguable connection between their compliance with the Meaningful Use criteria and their decision to use tracking technology to barter away their patients' sensitive personal information to third parties for advertising purposes. And Defendants' asserted "federal defenses" are not colorable. This Court should affirm.

# I. DEFENDANTS DO NOT "ACT UNDER" FEDERAL OFFICERS BY MAINTAINING ONLINE PATIENT PORTALS

The Supreme Court and this Court have held, time and again, that a private entity's compliance with federal requirements—even burdensome ones—does not transform its private conduct into official acts worthy of federal protection. Defendants do not even plead that much.

## A. A Private Party "Acts Under" a Federal Officer Only When It Assists in the Performance of a Governmental Function Under Exacting Supervision

The Supreme Court's decision in *Watson* controls these appeals. 551 U.S. at 153-57. The question in that case, as here, was "whether the fact that

a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail brings that company within the scope" of §1442(a)(1)'s "acting under" clause. *Id.* at 145. The answer was "no."

"[S]ubjection, guidance, or control" is necessary to establish that a private party is "acting under" a federal officer or agency, the Court held. *Watson*, 551 U.S. at 151 (citation omitted). But it is not sufficient. "[P]recedent and statutory purpose" impose a further requirement: A "private person's 'acting under' must involve an effort to ***assist***, or to help ***carry out***, the duties or tasks of the federal superior." *Id.* at 152. That includes doing things the government would otherwise do for itself. *Id.* at 153-54. It does "***not*** include simply ***complying*** with the law." *Id.* at 152.

One reason for that limitation is linguistic. Ordinary speakers of English would not refer to someone who obeys a federal official's command as "acting under" that official. *See Watson*, 551 U.S. at 152. Another reason is rooted in the statute's purpose. First passed in 1812, the federal officer statute was expanded over the nineteenth century in response to confrontations between the exercise of state and federal power. *See id.* at 147-49. The statute's "'basic' purpose is to protect the Federal Government from the interference with its 'operations' that would ensue were a State able" to impose liability on "'officers

and agents' of the Federal Government" for actions "'within the scope of their authority.'" *Id.* at 150 (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)).

That purpose is not served by applying the statute to everyone who follows federal law. "When a company subject to a regulatory order (even a highly complex order) complies with the order," the Court explained, "it does not ordinarily create a significant risk of state-court 'prejudice.'" *Watson*, 551 U.S. at 152. "Nor is a state-court lawsuit brought against such a company likely to disable federal officials from taking necessary action designed to enforce federal law" or "to deny a federal forum to an individual entitled to assert a federal claim of immunity." *Id.*

The "upshot" is that a private firm's compliance with a federal regulation—"even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored"—does not imbue those activities with an official character. *Watson*, 551 U.S. at 153. The kind of relationship the statute protects "***goes beyond simple compliance*** with the law and helps officers fulfill other ***basic governmental tasks***." *Id.* (emphasis added). Thus, for example, government contractors supplying products to the military

have been deemed to be "acting under" federal officers. *See id.* at 153-54; *Baker*, 962 F.3d at 941-43; *Ruppel*, 701 F.3d at 1181.

Defendants fail both parts of *Watson's* "acting under" test. They do not plausibly allege that fulfilling the Meaningful Use criteria entails the kind of "unusually close" relationship "involving detailed regulation, monitoring, or supervision." *Watson*, 551 U.S. at 153. And they do not plausibly allege that creating online portals where their patients can access health records is among the ***federal government's*** "duties or tasks." *Id.* at 152. Instead, the pleadings show only that Defendants comply with government regulations. That is not enough. *Id.* at 157.

### B. Defendants Fail To Allege Involvement with a Governmental Task or Duty

Defendants argue at length that improving access to electronic health records is an important government objective. Br.31-32. By helping the government realize that objective, Defendants contend that they are assisting the government "in producing something it want[s] or needs." Br. 25. But not everything the government wants or needs as a matter of policy is a "basic governmental task" or official "duty" that imbues private action with official character. The question is whether the private actor is doing or helping to do

something the government ***would otherwise have to do for itself***. Building portals for ***Defendants'*** patients is not one of those things.

1. *This Court's Decision in* Martin *Resolves These Appeals*

This Court's decision in *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210 (7th Cir. 2022), is squarely on point, making clear that even entities furthering government interests of life-or-death importance under threat of being denied reimbursement retain their "private character." *Id.* at 1213.

The defendant in *Martin* was a nursing home sued under state law for failing to take adequate precautions in response to the COVID-19 pandemic. 37 F.4th at 1212. The court acknowledged that the nursing home was "subject to extensive federal regulation (especially if it hopes to be reimbursed under the Medicare or Medicaid program), and that orders issued by the Centers for Disease Control after the pandemic began ha[d] increased that regulatory burden." *Id.* But, the court observed, "it has been understood for a long time that regulation does not turn a private entity into a public actor"—including, specifically, in the context of government-sponsored healthcare. *Id.* at 1212-13 (citing *Blum v. Yaretsky*, 457 U.S. 991 (1982)). "Private firms retain their private character even when many aspects of their conduct are controlled by federal statutes and rules." *Id*. at 1213.

*Martin*'s reasoning resolves this appeal. As here, *Martin* involved a highly regulated private actor in the healthcare space. *See* 37 F.4th at 1212. As here, it involved state-law claims that, according to the defendant, challenged compliance with rules meant to further a critical government priority. *Id.* at 1212-13. And, as here, it involved the threat of lost Medicare reimbursement. *Id.* Yet the court had no trouble concluding that the defendant was not "acting under" a federal officer. *Id.* at 1213.

If anything, the policy at issue in *Martin* was far more urgent and consequential than encouraging "'private stakeholders'" to help "'ensure that health information'" is readily available online. Br. 30 (emphasis omitted) (quoting App.476). At the time of the events that gave rise to the litigation in *Martin*, May 2020, the country faced a rapidly spreading, lethal disease with no effective treatment or vaccine. 37 F.4th at 1212. The CDC's directives were aimed, quite literally, at saving lives. The court concluded nonetheless that "[n]othing the CDC has said during the pandemic authorizes us to depart from the approach the Supreme Court took in *Watson* and *Blum*." *Id.* at 1213.

The threat of lost Medicare reimbursement was also, if anything, greater in *Martin*. The court noted specifically that complying with the burdensome requirements in that case was essential "if [the defendant]

hope[d] to be reimbursed under the Medicare or Medicaid program" at all. *Martin*, 37 F.4th at 1212; *see* Br.17, 26-28. That did not change the calculus, either.

Defendants do not mention—let alone attempt to distinguish—*Martin*. Instead, Defendants argue (at 26-28) that they are akin to government contractors, which have been recognized as "acting under" federal officers in some circumstances. And they contend (at 31-35) that, without Defendants' help, the federal government would itself create the patient portals Defendants maintain on their websites for their patients' use. Neither argument moves the needle.

#### 2. *Advancing Federal Policy Priorities Does Not Transform Private Acts into Official Action*

Defendants stress (at 31-35) the importance of the government's push to expand online access to health records. But not everything the government would like to see happen is an official duty or governmental task that can imbue a private action with official character.

"'Acting under,' covers situations . . . where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete." *Ruppel*, 701 F.3d at 1181. A person who joins a federal marshal in a raid on an illegal distillery, *Davis v. South Carolina,* 107 U.S. 597,

600 (1883), or who drives federal agents to such a raid, *Maryland v. Soper*, 270 U.S. 9, 30 (1926), readily qualifies. *See Watson*, 551 U.S. at 149-51. Without private assistance, the government would need to hire more agents to fill those roles. The same reasoning applies to manufacturers producing materiel in wartime. *See, e.g.*, *Baker*, 962 F.3d at 941, 943-44 (wartime chemical production); *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014-15 (7th Cir. 2018) (manufacture of bombers for the Air Force). With or without private help, the government must provide for national defense. *See* U.S. Const. art. 1, § 8, cl. 11; art. 2, § 2.

By contrast, there are countless government initiatives that rely on private action precisely because they involve tasks beyond the government's purview. For example, both Congress and the President routinely stress the vital role small businesses play in the nation's economy. Congress even created the Small Business Administration in 1953 to assist small business owners. *See* Small Business Act, Pub. L. No. 118-31 (Dec. 22, 2023) (to be codified at 15 U.S.C. § 631 *et seq.*); U.S. Small Business Administration, *Homepage*, https://www.sba.gov/ (last visited Mar. 22, 2024). But no one imagines that small business owners are "acting under" federal officers when they obtain financing to help further that important objective. The

government has likewise for decades made energy efficiency a national priority. *See* Energy Policy Act, 42 U.S.C. § 13201 *et seq*. Homeowners can even obtain government rebates for installing energy-efficient heating. *See* Cong. Rsch. Serv., *The Inflation Reduction Act: Financial Incentives for Residential Energy Efficiency and Electrification Projects* 1-2 (Nov. 28, 2022), https://crsreports.congress.gov/product/pdf/IF/IF12258/2?itid=lk_inline_-enhanced-template. Yet no one imagines that government agents would be installing heat pumps in private residences if the homeowners did not.

Defendants assert that, without "conscript[ing]" them, the federal government would "have to go it alone" to modernize the Nation's recordkeeping systems. Br.34. But Defendants' only support for that proposition is a catalog of platitudes from government reports or guidance that lack the force of law. *See* Br.11-15, 31-34, 36-41; p. 33, *infra*. The government's stated interest in creating an "environment" conducive to "fostering breakthroughs" and "support[ing] innovation" in health information technology says nothing about the government having to pick up the slack if healthcare providers did not create their own patient portals. Br.33-34 (emphasis omitted) (quoting App.707). Neither do the pronouncements in the 2011-2015 Federal Health IT Strategic Plan ("Strategic Plan"), stating that

the government has made "'individual access to data'" a primary objective and that it needs the help of patients' healthcare providers "'to change these dynamics.'" Br.39-40 (emphasis omitted) (quoting App.423, 740).[8]

Defendants point (at 31-32, 44-45) to the patient portals the government has implemented on its own websites for Medicare beneficiaries and veterans. If the government has patient portals, they contend, then creating and maintaining portals surely are "governmental tasks." Br.31-32. No. That the government creates and maintains portals for its ***own*** patients does not imply that creating such portals for ***Defendants'*** patients is a governmental task. The private health insurer operating the Federal Employee Health Benefits program may be "acting under" the federal government because it is helping the government provide health benefits for ***its own*** employees—something the government needs to "compete for the best talent along with private companies." *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1232-34 (8th Cir. 2012), *abrogated on other grounds by BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230 (2021). But providing health benefits for the employees of those

[8] Defendants try to distinguish *Watson*, arguing that the government regulated an ***existing*** market in that case, whereas here, the government supposedly ***initiated*** the healthcare industry's modernization effort. Br.26. That is a non sequitur; whether government regulation follows or leads an industry makes no difference to whether what the regulated party does is a ***governmental*** task or duty.

private companies is distinctly ***not*** a governmental task. *See BJC Health Sys.*, 89 F.4th at 1046; *see also* Br.4 (acknowledging that the "United States does not have nationalized healthcare"). The same goes for creating patient portals for private healthcare providers.

Two other federal courts of appeals, facing substantially identical facts, have agreed. The Eighth Circuit held that a hospital was not "acting under" a federal officer when it created and maintained a patient portal because "[t]he design of private websites is not—and has never been—a basic ***governmental*** task." *BJC Health Sys.*, 89 F.4th at 1045. That healthcare providers, along with "[m]eat processers" during the pandemic and "fossil fuel producers" with governmental contracts, "all engage in business activities that are important and in which the federal government and the public are deeply interested" is not enough to bring those businesses within § 1442(a)(1)'s scope. *Id.* at 1046.

The Third Circuit echoed that reasoning just last month. "To be sure," the court acknowledged, a hospital that operates a patient portal "does advance the government's policy." *Mohr*, 93 F.4th at 105. But that is "mere compliance." *Id.* "Advancing governmental policy while operating one's own business is not the same as executing a delegated governmental duty." *Id.* With no argument that it was operating its portal "***on behalf of*** the

government," *id.*, or "***for the government***," the hospital could not show that it was "acting under the federal government for purposes of § 1442(a)(1)," *id.* at 106 (emphasis added).

Defendants argue (at 35-41) that *BJC Health System* is distinguishable because it did not address every argument they raise here. That is no basis to disregard the Eighth Circuit's reasoning. In any event, the distinctions make no difference. Defendants assert that *BJC* addressed the use of tracking technology only on the defendant's patient portal. But Plaintiffs draw no distinction between Defendants' portals and the rest of their websites. *See* App.27 ¶ 5 (*Elkins*); App.1319 ¶ 5 (*Chiaro*).

Defendants note that the Eighth Circuit did not discuss the Strategic Plan or the Office of the National Coordinator's ("ONC") Patient Engagement Playbook, https://www.healthit.gov/playbook/pe/ (last visited Mar. 22, 2024) ("Playbook"). But there is no reason to think the government's generalized statements in non-binding guidance would have impacted the court's reasoning or its conclusion that a private hospital creating and maintaining patient portals was not "acting under" a federal officer in doing so. *See BJC Health Sys.*, 89 F.4th at 1046 ("BJC showed that HHS endorses online patient

portals, and HHS has provided subsidies for them. BJC has not shown that it performed a basic task or duty of the federal government.").

3. *Incentive Payments Do Not Make Defendants Government Contractors*

Seizing on the special treatment sometimes accorded to government contractors, Defendants contend they have "applied for and received funds from HHS" for participating in the Meaningful Use program "***as if*** acting pursuant to a contract." Br. 27 (emphasis added). That proves too much.

If applying for and receiving funds in connection with a federal program "evidence[d] actions taken by private actors in response to a federal officer's directives," Br.27, then ***every*** healthcare provider that participates in the Medicare or Medicaid program would be "acting under" a federal officer. *See Watson*, 551 U.S. at 153 (declining to read the removal statute so broadly that it "brings within its scope state-court actions filed against private firms in many highly regulated industries"). As *Martin* makes clear, that is not the law. *See Martin*, 37 F.4th at 1212-13; *Blum*, 457 U.S. at 1009-11; *cf. Mays v. City of Flint*, 871 F.3d 437, 444-45 (6th Cir. 2017) ("[T]he receipt of federal funding alone cannot establish a delegation of legal authority" under *Watson*).

Defendants protest that *Watson* directs courts to "look for evidence of payment." Br. 28. But *Watson* nowhere suggested that payment ***alone*** creates

the "unusually close" relationship that can in some cases support a finding that a private actor is "acting under" federal authority. 551 U.S. at 153. Rather, *Watson* listed payments as among the kinds of evidence the Court might expect to see in cases where an agency has delegated its "legal authority" to a private actor. *Id.* at 156. And while this Court has "suggested" that such a delegation of "rulemaking authority" "might make a difference," *Panther Brands, LLC v. Indy Racing League*, *LLC*, 827 F.3d 586, 590 (7th Cir. 2016), Defendants do not contend that happened here, *see Bradley v. Vill. of Univ. Park, Illinois*, 59 F.4th 887, 897 (7th Cir. 2023) (failure to raise argument in opening brief waives this Court's review).[9]

Defendants' "payments" are nothing more than the ordinary levers of compliance the government uses across a wide spectrum of federal regulations. *See, e.g.*, *Martin*, 37 F.4th at 1212. They do not strip Defendants of their "private character." *Id.* at 1213; *Watson*, 551 U.S. at 157.

[9] That renders irrelevant Defendants' authorities that turned on findings of delegated authority. *See* Br.28-29 (citing *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1138 (11th Cir. 2017); *Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190, 201 (5th Cir. 2019); *Cessna v. Rea Energy Coop., Inc.*, 753 F. App'x 124, 127 (3d Cir. 2018)). Indeed, those decisions are even less helpful because they involved ***implicit*** delegations—a theory this Court has never accepted. *See Lu Junhong v. Boeing Co.*, 792 F.3d 805, 810 (7th Cir. 2015); *Watson*, 551 U.S. at 157 ("[N]either Congress nor federal agencies normally delegate legal authority to private entities without saying that they are doing so.").

### C. Defendants Fail To Allege Exceptionally Close Supervision

Finally, even private parties that indisputably carry out a governmental function or official duty must show an "unusually close" relationship to a federal superior, "involving detailed regulation, monitoring, or supervision." *Watson*, 551 U.S. at 153. Defendants allege none of that.

Although Defendants argue that the Meaningful Use program involves "strict oversight," Br.26, the fact is that Defendants qualify for payments by ***self***-certifying compliance, 42 C.F.R. § 495.40; 45 C.F.R. § 170.315. And the program's requirements are anything but detailed. The regulations Defendants invoke require only that participants provide "online" access to medical records. *See* 42 C.F.R. § 495.20(f)(12)(i)(B). They do not say ***how***.

The Playbook Defendants cite for (marginally) more detailed guidance is not found in any statute or regulation. It is "a compilation of tips and best practices we're collecting from clinicians and health systems like yours." ONC, *Homepage*, Playbook. Compare that to the allegations this Court highlighted in *Baker*, that the defendants' "materials and manufacturing processes corresponded to detailed federal specifications and stayed under the tight control of the government." 962 F.3d at 944. Or to the allegations in *Ruppel*, that the defendant had supplied asbestos to the government "under the Navy's

direction and in accordance with detailed Navy specifications." 701 F.3d at 1179. Defendants do not identify any court, anywhere, ever that has held that following an agency's "tips and best practices" opens the door to federal court.

This Court's decision in *Panther Brands* is instructive. In that case, the Army National Guard had a private marketing agent solicit and summarize bids for private car racing sponsorships. 827 F.3d at 590. Sued for fraud in state court, the marketing agent claimed federal subject-matter jurisdiction under § 1442(a)(1). The court acknowledged that "private contractors performing tasks for the government are sometimes covered under section 1442." *Id.* But it concluded that extending this treatment to the agent would "take this idea too far." *Id.* The kind of administrative work the defendant had done for the Guard "fell far short of the closely monitored and highly regulated relationships" at work in cases involving military contractors, the provision of government-employee health insurance, or the conscription of private citizens for raids on illegal distilleries. *Id.*; *see* pp. 25-26, *supra.* So too here.

Defendants' reporting obligations do not change that. Self-certification is no different from the ordinary compliance work regulated firms do every day. *See Lu Junhong*, 792 F.3d at 810 (finding no "dispositive difference

between certified compliance and ordinary compliance"). Nor does Defendants' citation to *National Federation of Independent Businesses v. Sebelius*, 567 U.S. 519 (2012), support their argument that the threat of reduced Medicare reimbursement can provide the level of control required by *Watson*. Br. 28. That Congress exceeds its power under the Spending Clause when it conditions aid to states does not remotely suggest that conditions on Medicare reimbursement "control" Defendants' actions. And *Martin* confirms that such conditions are not enough to support removal regardless. *See* 37 F.4th at 1212.

*   *   *

The Court's analysis can end here. There is no meaningful distinction between this case and *Martin*, and the weight of authority in Plaintiffs' favor, in and out of this Circuit, is overwhelming. Section 1442(a)(1), however broadly construed, was never meant to sweep in every private actor that interacts with the federal government. To read "acting under" to encompass Defendants in this case "would expand the scope of the statute" in the manner *Watson* expressly rejected, leaving no limiting principle. *See Watson*, 551 U.S. at 153. The decisions below should be affirmed.

## II. Defendants' Conduct Does Not "Relate To" The Exercise Of Federal Authority

Even if Defendants could plausibly allege that they are "acting under" a federal officer, they fail to allege that their decisions to track and share their patients' sensitive personal information are related to the Meaningful Use criteria. Section 1442(a)(1) reaches only those lawsuits "for or relating to" acts "under color of [federal] office." 42 U.S.C. § 1442(a)(1). The statute does not require proof of "rigid causation." *Baker*, 962 F.3d at 944. But it demands more than mere coincidence between the action sought to be removed and the official duties or governmental functions the defendant is allegedly assisting. At a minimum, it requires a showing that the plaintiff's claims have a "connection" to something the government directed the defendant to do. *Id.*

Citing *Baker*, Defendants maintain (at 42-43) that whether the government directed them to install trackers is for a federal court to decide. That is not what *Baker* says. The plaintiffs in *Baker* filed state-court suits, claiming they were injured by pollution released by nearby manufacturers. 962 F.3d at 940-41. The defendant manufacturers removed the suits, alleging that they had manufactured the pollutants in wartime at the government's direction. *Id.* at 940. The plaintiffs moved to remand, arguing that defendants had not shown that their work at the government's direction—as opposed to

their ordinary post-war manufacturing of the same materials—in fact "caused" the plaintiffs' injuries. *Id.* at 943. The court rejected that contention.

What matters for removal purposes, *Baker* concluded, is that the claims have a "connection" to acts "directed by the federal government." 962 F.3d at 945. Whether that federally directed conduct in fact caused the plaintiffs' injuries is a merits question for a federal court. *Id.* at 944. But that did not relieve the defendants of the obligation to show that the plaintiffs' claims had some connection to conduct ***in fact*** "directed by the federal government." *Id.* at 945. That makes sense. After all, the federal officer removal statute is intended to protect the government from "interference with its 'operations.'" *Watson*, 551 U.S. at 150.

*Baker* emphasized that the defendants had alleged that "their materials and manufacturing processes corresponded to detailed federal specifications and stayed under the tight control of the government." 962 F.3d. at 944. Although it "remain[ed] to be seen whether a connection or association exists between the [plaintiffs'] health conditions and their alleged exposure to federally dictated chemicals or others," *id.*, the defendants had drawn a plausible connection between the plaintiffs' claims and federally directed conduct.

There is nothing like that here. Defendants do not allege that they made their decisions to install third-party trackers in response to a government directive. *Compare Baker*, 962 F.3d at 943 (citing "the government's detailed specifications," "'the compulsion to provide the product to the government's specifications,'" and "continuous federal supervision" (citation omitted)), *with Betzner*, 910 F.3d at 1015 (defendant "was under the sole direction of the United States Air Force" when it engaged in the challenged conduct). Nor do they point to any regulation or government statement even suggesting that they implement third-party trackers on their websites.

Defendants argue that "[t]he very technological tools that form the basis of the alleged privacy violations contained in Plaintiffs' complaints were promoted by the federal government for patient portals." Br.44. But they identify no allegations or evidence supporting that assertion. The best Defendants muster is a series of vague statements from the ONC's collection of "tips," which refers to the need to "leverage every educational opportunity" and "[t]ake advantage of every touchpoint" to "promote patient portal enrollment." Br.44 (quoting App.792). Whatever that means, it does not even arguably suggest that Defendants should surreptitiously collect and barter away their patients' personal information.

Defendants claim that the government encouraged them to post promotional "'language'" about their patient portals on their "'website or Facebook page to let patients know how they can use the patient portal to participate in their care.'" Br.38, 43-44 (emphasis omitted) (quoting ONC, *Introduction*, Playbook). But that hardly tells "healthcare providers how to design their patient portal websites"—let alone directs them to install third-party trackers. Br.38.

Defendants point again to CMS' Medicare patient portal, which they say uses "the same source code" at the center of this litigation. Br.45. For one thing, this suit challenges ***Defendants'*** use of tracking technology on ***their*** websites—not ***CMS's*** practices on ***its*** website. For another, HHS (which subsumes CMS) has sounded the alarm about exactly the kinds of abuses Plaintiffs allege in their complaints. After investigations by independent journalists and New York State authorities revealed widespread mishandling of patient data among healthcare providers, App.45-47 ¶¶94-99, HHS' Office of Civil Rights and the FTC issued bulletins warning health care providers ***against*** using online tracking technologies on their websites—and on their patient portals. *See* p. 11, *supra.*

Defendants worry that a successful challenge to their use of trackers "could chill nationwide meaningful-use efforts." Br.45. But that argument goes nowhere without plausible allegations that the government in fact requires participants in the Meaningful Use program to use trackers. Defendants give no reason to think providers cannot satisfy the Meaningful Use criteria without selling off sensitive patient data to third parties. *See* 42 U.S.C. §§300jj-11, 1395w-4(o) (HITECH Act); 42 C.F.R. §§495.20(f)(12)(i)(B), 495.40 (setting out criteria for qualifying EHRs); 45 C.F.R. §170.315(e)(1)(i) (same, for "Health IT"); *id.* §170.102 (defining the "Common Clinical Data Set" required in EHRs as containing demographic and clinical health information but setting out no metrics about driving web traffic).

For the same reason, Defendants make no headway with the claim that Plaintiffs would not have sued "in the absence of the modern website" Defendants created. Br.45. Plaintiffs do not challenge Defendants' creation of their websites or patient portals. They challenge Defendants' unrelated decision to install third-party software on those websites and portals that surreptitiously collects and transmits patients' personal data without their knowledge or consent. *See* App.39 ¶¶61-62.

As broad as the statutory phrase "relating to" is, to read it the way Defendants urge would render § 1442(a)(1) nearly limitless. Under that logic, anything Defendants do on their website that might expose them to state law claims, such as false advertising or defamation, would grant them entry to federal court simply because their conduct may have had something to do with the patient portals that are also on their website. Such a loose interpretation of the statute would be boundless and cannot be right.

## III. DEFENDANTS HAVE NO COLORABLE FEDERAL DEFENSE

Defendants' arguments on § 1442(a)(1)'s final element—a colorable federal defense—likewise fail. Defendants raise two defenses (at 46-49): one related to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); the other related to implied conflict preemption under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347-48 (2001). Neither is colorable.[10]

[10] Some Defendants asserted other defenses in their notices of removal. *See* App.604 ¶¶ 39-40 (*Doe*). Because they did not raise those defenses in their opening brief on appeal, those other claimed defenses are abandoned. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("A party that omits from its opening appellate brief any argument in support of its position waives or abandons that party's claim on appeal.").

### A. Defendants Have No HIPAA Defense

Pointing to Plaintiffs' allegations that Defendants violated HIPAA, Defendants argue (at 46-47) that claims based on federal duties support removal. But the federal-duty defense Defendants invoke applies only where a plaintiff asserts violations of a "federally created duty" under a federal statute. *Mesa v. California*, 489 U.S. 121, 129 (1989). Plaintiffs do ***not*** assert claims based on federally created duties under federal statutes. They assert claims based on ***state***-law duties, created by ***state*** statutes and common law.

HIPAA's requirements may inform whether Defendants have breached those state-law duties. *See, e.g.*, *Henry v. Cmty. Healthcare Sys. Cmty. Hosp.*, 134 N.E. 3d 435, 438 (Ind. Ct. App. 2019) (HIPAA may inform standard of care "in tort claims related to alleged breaches of the duty of confidentiality owed by medical providers to their patients" under Indiana common law). But that does not implicate the federal-duty doctrine. At bottom, Defendants' "defense" is no more than an argument that Plaintiffs should lose on the merits. That cannot support removal. *Jefferson County v. Acker*, 527 U.S. 423 (1999), is not to the contrary. That case involved a claim of intergovernmental tax immunity—a classic example of a real federal defense. *Id.* at 431.

Defendants can claim no immunity from HIPAA; nor can they point to any form of HIPAA preemption.

### B. Defendants Have No Implied-Preemption Defense

Defendants offer a conclusory argument that Plaintiffs' claims conflict with their "relationships with HHS, CMS, and the National Coordinator" and are therefore preempted under *Buckman*, 531 U.S. at 347-48. Br.49-50. Defendants do not explain which of Plaintiffs' claims they think are preempted or why those claims would interfere with their relationships with the federal government. They also misunderstand *Buckman*.

Even assuming (without evidence) that the suits here would affect the way Defendants comply with federal law, nothing in *Buckman* suggests that it preempts every lawsuit that has such an effect. The plaintiffs in that case sued a medical device manufacturer under state law for committing fraud on the FDA. *Buckman*, 531 U.S. at 343. The Supreme Court held that the suit was preempted. "The conflict," the Court explained, "stems from the fact that the federal statutory scheme amply empowers the FDA to punish and deter fraud" and that the agency uses that authority "to achieve a somewhat delicate balance of statutory objectives." *Id.* at 348. The state court suit threatened the FDA's "flexibility" to decide whether and when to pursue a fraud claim—

"a critical component of the statutory and regulatory framework under which the FDA pursues difficult (and often competing) objectives." *Id.* at 349.

Nothing of the sort is present here. Plaintiffs do not contend that Defendants falsely certified compliance with the Meaningful Use criteria or that they otherwise broke the program rules. This is accordingly not a case in which state-law claims threaten to impede a regulator's exercise of its enforcement discretion. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 557 (7th Cir. 2010) (distinguishing between *Buckman* "fraud-on-the-agency" claims and "claims based on state law tort principles"). *Buckman* simply does not apply.

**CONCLUSION**

Defendants fail to meet any of the three independently necessary criteria for removal. This Court should affirm the district courts' decisions, and these cases should return to the state courts where they belong.

March 22, 2024

Respectfully submitted,

/s/ Thomas J. Wiegand

Thomas J. Wiegand
Eugene A. Sokoloff
MoloLamken LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 450-6700 (telephone)
(312) 450-6701 (fax)
twiegand@mololamken.com
esokoloff@mololamken.com

Sara Tofighbakhsh
MoloLamken LLP
430 Park Avenue
New York, NY 10022
(212) 607-8160 (telephone)
(212) 607-8161 (fax)
stofighbakhsh@mololamken.com

J. Gerard Stranch IV
Michael C. Iadevaia
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
(615) 254-8801 (telephone)
gstranch@stranchlaw.com
miadevaia@stranchlaw.com

Lynn A. Toops
Cohen & Malad, LLP
One Indiana Square
Suite 1400
Indianapolis, IN 46204
(317) 636-6481 (telephone)
(929) 239-2968 (fax)
ltoops@cohenandmalad.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Cir. R. 32(c) because this brief contains 8,866 words as determined by Microsoft Word, including the headings and footnotes and excluding the portions exempted by Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Cir. R. 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced serif typeface using Century Expanded BT 14-point and 13-point font.

March 22, 2024

/s/ Thomas J. Wiegand
Thomas J. Wiegand

*Attorney for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2024, I caused Plaintiffs-Appellees' response brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

March 22, 2024

/s/ Thomas J. Wiegand
Thomas J. Wiegand